AMINATA JAH                                                                  )
18717 PINTAIL LANE                                                           )
GAITHERSBURG, MD 20879                                                       )
                                                                            )
               Plaintiff,                                                    )
         v.                                                                  )
                                                                            )
Greensboro Plastic Surgical Associates, P. a.                               )
Gerald L. Truesdale, M.D.,                                                   )
The Moses H. Cone Memorial Hospital                                         )
The Moses H. Cone Memorial Hospital Operating Corporation                   )
                                                                            )
               Defendants,                                                   )
Serve:                                                                       )
                                                                            )
GERALD L. TRUESDALE, M.D.                                                    )
2716 HENRY STREET                                                           )
GREENSBORO, NORTH CAROLINA 27405                                            )
                                                                            )
GERALD L. TRUESDALE, M.D.                                                    )
502 STAUNTON DRIVE                                                          )
GREENSBORO, NORTH CAROLINA  27410                                           )
                                                                            )
THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION                   )
CHERYL KOOB                                                                  )
1200 NORTH ELM STREET                                                       )
GREENSBORO, NORTH CAROLINA 27401                                            )
                                                                            )
THE MOSES H. CONE MEMORIAL HOSPITAL                                         )
CHERYL KOOB                                                                  )
1200 NORTH ELM STREET                                                       )
GREENSBORO, NORTH CAROLINA 27401                                            )
                                                                            )

1

<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COMES NOW Plaintiff, Aminata Jah, by and through counsel, and hereby brings this civil action pursuant to 28 U.S.C. § 1332, N.C.G.S. 90-21.11(2) and the common law doctrine of res ipsa loquitor

<u>JURISDICTION AND VENUE</u>

1. Jurisdiction is based upon 28 U.S.C. § 1332 (diversity jurisdiction) as Plaintiff Jah is a resident of the State of Maryland and all Defendants are residents of the State of North Carolina.

2. The actions complained of in this matter are the direct and proximate cause of Plaintiff's direct medical expenses which currently exceed $100,000 and of her request for compensatory and punitive damages in excess of $25,000 each.

3. Venue for this action is appropriate in the middle district of North Carolina as each of the Defendants are located in this district.

<u>PARTIES</u>

4. The plaintiff, Aminata Jah ("Jah" or "Plaintiff") is a citizen and resident of Montgomery County, Maryland. Plaintiff was a citizen and resident of Montgomery County, Maryland at all times pertinent to this action and she brings this action on her own behalf.

5. Defendant Greensboro Plastic Surgical Associates, P.a. (GPSA) is a professional corporation organized under the laws of the State of North Carolina and having its principal place of business in Greensboro, North Carolina. At all times pertinent to this action, GPSA was operated by Gerald L. Truesdale, M.D. who holds himself out to the public as a medical doctor, specializing in plastic surgery procedures and who has the

2

proper training, experience and qualifications to perform plastic surgery and provide competent subsequent care to individuals seeking such care.

6. Defendants, The Moses H. Cone Memorial Hospital and The Moses H. Cone Memorial Hospital Operating Corporation ("Cone Defendants") are non-profit corporations organized under the laws of the State of North Carolina and having their principal place of business in Greensboro, North Carolina. At all times pertinent to this action, the Cone Defendants collectively owned and or operated a hospital known as "Moses H. Cone Memorial Hospital" (hereinafter referred to as "Cone Hospital") located at 1121 North Church Street, in Greensboro, Guilford County, North Carolina.

7. Cone Defendants, represented to the public that Cone Hospital had the ability to accept and care for persons with significant medical needs including those experiencing medical emergencies and that its staff and employees were properly trained, qualified and sufficient in number to care for individuals with such needs.

FACTS

8. On or about February 24, 2021, Plaintiff had a telephonic consultation with Defendant Truesdale in which she expressed that she was considering undergoing plastic surgery procedures including abdominoplasty with repair of rectus muscle and liposuction.

9. On or about March 4, 2021, Plaintiff attended an in-person consultation with Defendant Truesdale at his facility Defendant GPSA pursuant to her plans to undergo a tummy tuck with repair of muscle of the rectus abdominus. It was noted that she had no new medical problems and was taking Losartan daily. The Plaintiff was assessed with severe abdominal dermatochalasis, and as a candidate for tummy tuck with repair of diastasis recti and liposuction of lateral abdominal areas. Defendant Truesdale noted that he had

answered all of Plaintiff's questions and discussed all potential risks and possible complications of the procedures.

10. Plaintiff underwent a tummy tuck with repair of diastasis recti and liposuction procedure performed by Defendant Truesdale at Defendant GPSA on or about March 5, 2021. Defendant Truesdale noted that Plaintiff tolerated the procedure well and that there were no complications during the procedure.

11. Plaintiff returned to GPSA on March 10, 2021, for follow-up evaluation. Defendant Truesdale noted that Plaintiff was sore, had moderate pain, no fever, stable vital signs and that her drainage was adequate. However, Defendant Truesdale's notes on Plaintiff's condition during her March 10, 2021 visit were inconsistent. His typed note stated that after Plaintiff's dressings were changed, Plaintiff was able to get dressed and ambulate back to her car. In a dictated note detailing the same visit, Dr. Truesdale noted that Plaintiff was "very sore," was concerned about the amount of her drainage and that Plaintiff was assisted with getting dressed and walking out to her car.

12. Plaintiff recalls that she required the assistance of a GPSA nurse to walk back to the car following the March 10, 2021 visit, and that she relayed to Dr. Truesdale that her drainage was soaking through her bandages and wetting her bedsheets each night.

13. Plaintiff returned to GPSA for follow-up evaluation on March 15, 2021. Dr. Truesdale noted that Plaintiff seemed dehydrated, weak and reported not drinking any fluid or eating any food at home. Additionally, Defendant Truesdale concluded that Plaintiff's 'sister' had not been taking care of her well and that her dressings had not been changed since her last visit. However, Plaintiff recalls that this notation is inconsistent with Truesdale's instructions to her that her dressings would be changed at her post-operative

4

follow-up appointments with him. Finally, Plaintiff's blood pressure was recorded as 90/56 and her pulse at 72 and Defendant Truesdale reported that Plaintiff was given fluids to drink until her blood pressure came "back up to normal."

14. Plaintiff recalls that her dressings were changed at the March 15, 2021 visit and that she had a strong odor emitting from her wound during that visit. She recalled that the nurse who assisted with her dressing change held her nose at some points during the dressing changes because she could not stand the odor. Additionally, the nurse complained that Plaintiff made the dressing change difficult because she was too weak to lift herself up from the changing table. Dr. Truesdale's March 15, 2021 notes did not record the presence of a strong odor, however, he included a dictated note which stated that Plaintiff's dressings were changed and that she was given five boxes of apple juice to drink after which her blood pressure reading improved to 110/68 prior to leaving GPSA. Plaintiff was unable to ambulate back to her car following the March 15, 2021 visit and required the assistance of a wheelchair.

15. Plaintiff Jah was taken to the emergency room at Moses H. Cone Memorial Hospital (Cone Hospital) on March 16, 2021, after losing consciousness in the bathroom, and experiencing loss of appetite, refractory nausea and vomiting and lack of bowel movement for the previous four days. Upon admission, it was noted that she was status post liposuction about two weeks prior with "spectacularly elevated" creatinine levels and wounds that were draining feculent material which was smelly and maroon in color. The same material was noted to be draining from dehiscing wounds in both groins.

16. A CT scan of the abdomen and pelvis were ordered and blood and urine cultures were taken. The CT scan showed gas in the small intestine. Plaintiff's blood pressure reading

5

upon admission was 105/58, creatinine level was elevated to 9 and her pulse rate was 105.

17. Plaintiff was diagnosed with sepsis, renal failure with hyperakalemia and anemia and with suspected gross dehydration related to an intra-abdominal catastrophe. Plaintiff's wound drainage was also described as "obviously bloody."

18. On March 16, 2021 at 6:56 p.m. Dr. Walter J. Gray of Moses Cone's Critical Care Medicine Team described Plaintiff's care plan as 'diagnostic' and 'supportive,' and she was administered 2 liters of crystalloid, 3 amps of sodium bicarbonate with one to be given every hour until urine output is re-established, 2 units of packed cells and a CT scan of the abdomen. In addition, the general surgery team was consulted.

19. On March 17, 2021 at 10:02 a.m. Dr. Daniel C. Smith of Cone Hospital noted that there was an ongoing discussion between Dr. Truesdale and the surgeons at Cone Hospital regarding who would wash out the patient and that the CT scan of the abdomen was 'reassuring.'

20. On March 17, 2021 at 11:27 am Dr. Luke Kinsinger noted that he had briefly evaluated the Plaintiff one day prior and had discussed with Dr. Truesdale that he felt that Plaintiff's case needed additional wound care or wash out due to the severity of the infection and clinical picture and in order to allow healing by secondary intention. Dr. Kinsinger noted that since this was a plastic surgery wound, he felt that the patient would be best served by a plastic surgeon managing the wound.

21. In a March 17, 2021, consult note signed at Cone Hospital at 12:01 P.M., Dr. Truesdale recorded that he had seen Plaintiff prior to her admission and that she had a severe smell to her post-operative area at the time that he saw her. Dr. Truesdale also noted that

6

Plaintiff was under the care of an emergency room physician at Moses Cone Hospital and that a general surgeon was involved in her case to rule out any bowel obstruction or perforation. Dr. Truesdale noted that he would check on Plaintiff on a daily basis and that he expected to be notified about the plan of action with regard to Plaintiff's care.

22. On March 18, 2021 at or about 7:30 a.m., Plaintiff's family met with Dr. Smith and Dr. James O. Wyatt, III, regarding Plaintiff's care plan. Dr. Wyatt stated that there was nothing else that the staff at Cone Hospital could do for Plaintiff aside from "treating her medically," and that the surgical team would not be involved in her care because Cone Hospital had made a decision not to be involved in any more of Dr. Truesdale's post-operative cases. Furthermore, Dr. Wyatt advised the family to find a surgeon willing to assume Plaintiff's care or to have her transferred to Baptist Hospital.

23. Dr. James O. Wyatt is the medical director of the trauma program at Moses H. Cone Memorial Hospital, and upon information and belief, he directed the general surgery team during the dates of Plaintiff's admission.

24. After the Moses Cone General Surgery Team declined to intervene in Plaintiff's case, Plaintiff's family reached out to Dr. Claire Dillingham, a plastic surgeon, and asked her to intervene in Plaintiff's case.

25. In addition to maximizing the Plaintiff's nutritional status, Dr. Claire Dillingham recommended operating room debridement with a possible instillation of VAC and Acell placement. She discussed her recommendations with the general surgery team and with Plaintiff's family at her bedside to encourage further discussion with their surgeon. She also noted that she called Dr. Truesdale's office and left a message with his service.

26. On March 19, 2021, Dr. Claire Dillingham noted that Plaintiff had undergone abdominoplasty and liposuction about one week ago, had experienced several days of nausea and vomiting, concerns of sepsis, and had developed drainage from the incision in addition to drainage and swelling from the wound. Dr. Dillingham noted that Plaintiff's clinical state had improved, in that her BUN and creatinine levels were better but stated that it was concerning that her white blood cell count had increased. Her wound was described as draining dark yellowish-brown drainage and that Plaintiff had indicated extreme pain during the clinical examination.

27. On the same date, Dr. Dilligham performed surgery on Plaintiff, including; surgical excision of abdominal wound skin, placement of ACell powder, layers closure of 40 cm wound and placement of negative pressure wound therapy. Dr. Dillingham's surgical note reflected that as soon as she opened the Plaintiff's wound it became clear that there was bowel one and one-half to two centimeters (1 ½ to 2 cm) inferior to the umbilicus, at which time she immediately consulted general surgery.

28. Dr. Kinsinger responded to Dr. Dillingham's request for intraoperative consult on March 19, 2021, and he surgically repaired a full thickness small intestine perforation with adhesion of the intestine to the abdominal wall.

29. After Dr. Kinsinger completed his procedure, Dr. Dillingham immediately resumed care of the Plaintiff and completed surgical care of the Plaintiff's wound.

30. Plaintiff was discharged home on March 25, 2021.

31. Following the Plaintiff's small intestine perforation injury, she was unable to work until July 1, 2021, and has since been able to return to work only half time due to her inability to lift much weight or stand upright for long periods of time without abdominal

discomfort. In addition, she experiences continued difficulty with maintaining consistent bowel movements, bloating in the abdomen and scarring from bed sores and medicine related rashes developed during her period of treatment at Cone Hospital.

<u>CLAIMS AGAINST DEFENDANTS TRUESDALE AND GPSA</u>

32. The allegations contained in Paragraphs 1 through 30 hereinabove are realleged and incorporated into this Second Claim for Relief by reference.

33. Plaintiff contends that Defendants Truesdale, GPSA and their agents, nursing staff and employees were negligent in their care and treatment of Plaintiff Jah, and committed medical malpractice in two instances and under two separate legal theories:

a.  First, Defendants Truesdale and GPSA caused a small intestine perforation during Plaintiff's Jah's March 5, 2021 surgery, committing actionable medical malpractice under the doctrine of res ipsa loquitor. *Russell v. Sam Solomon Co*., 49 N.C. App. 126, 130 270 S.E. 2d 518, 520 (1980).

i.  A small intestine perforation rarely occurs standing alone

ii. A small intestine perforation is not an ordinary risk of the tummy tuck, diastasis recti repair and liposuction procedures

iii. Plaintiff has no direct evidence of how this injury occurred, however, she had no such injury prior to her surgery and it became clear almost immediately after the surgery that some damage to her bowels had been sustained during the surgery. Subsequent testing and laboratory studies performed at Cone Hospital some two-weeks after her surgery at GPSA confirmed that her small intestine had been perforated.

iv. The instrumentalities used to perform Plaintiff's March 5, 2021 surgery are under Defendants Truesdale and GPSA's control.

9

b. Second, Defendants Truesdale and GPSA committed actionable medical malpractice as defined by failed to refer Plaintiff for additional evaluation or testing after Plaintiff's signs and symptoms (including low blood pressure, abnormal pulse rate, severe pain, weakness, strong odor, abnormal wound drainage, etc.) indicated that at minimum she was suffering from severe infection;

i. Failed to provide a wash out and other surgical intervention when requested by Cone Defendants;

ii. Failed to accurately detail Plaintiff's condition in her chart and/or visit notes;

iii. Failed to provide care in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time;

iv. Failed to exercise reasonable care and diligence in the application of their knowledge and skill to Plaintiff Jah; and

v. Failed to use their best judgment in treating Plaintiff Jah.

34. The negligence of Defendants Truesdale, GPSA and their agents, nursing staff and employees as described hereinabove was a direct and proximate cause of the Plaintiff's small intestine perforation, sepsis, kidney injury, allergic rash, permanent skin scarring, lost time from work, bowel dysfunction and temporary partial disability. As the direct and proximate result of the defendant's negligence, Plaintiff Jah incurred substantial medical and hospital expenses and suffered additional pain, suffering, discomfort and disability.

35. Plaintiff Jah is entitled to recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for personal injuries.

36. The allegations contained in Paragraphs 1 through 34 hereinabove are realleged and incorporated into this Second Claim for Relief by reference.

37. Cone Defendants were negligent in their care and treatment of Plaintiff Jah and committed actionable medical malpractice ad defined by N.C.G.S. 90-21.11(2) in that its general surgery team, under the direction of Dr. James Wyatt:

a. Failed to provide Plaintiff with surgical intervention including at minimum a wash out for three days following Plaintiff's admission, although it was immediately apparent based on her signs and symptoms upon her admission on March 16, 2021, that Plaintiff had sustained "an intra-abdominal catastrophe," which would require surgical intervention for proper management of her condition;

b. Were negligent in the administration of Plaintiff's care by failing to notify Dr. Truesdale of their decision to decline surgical intervention in Plaintiff's case;

c. Failed to provide care in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time;

d. Failed to exercise reasonable care and diligence in the application of their knowledge and skill to Plaintiff Jah; and

e. Failed to use their best judgment in treating Plaintiff Jah.

38. The negligence of the defendant and its agents and employees as described hereinabove was a direct and proximate cause of the kidney injury, allergic rash, permanent skin scarring and pain and suffering sustained by Plaintiff Jah. Plaintiff incurred exorbitant medical costs (in excess of one-hundred thousand dollars $100,000) at Cone Hospital

while she awaited the surgical intervention that was needed to improve her condition. As the direct and proximate result of the defendant's negligence, Plaintiff Jah incurred substantial medical and hospital expenses and suffered additional pain, discomfort and disability during the three-day delay while Cone Defendants delayed surgical intervention.

39. Plaintiff is entitled to recover the costs of her medical expenses during defendant GPSA's delay of her surgical intervention in an amount in excess of one-hundred thousand dollars ($100,000).

40. Plaintiff Jah is entitled to recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for personal injuries.

41. Cone Defendants committed administrative negligence as follows:

a. By failing to implement policies to ensure that orders signing off on the care of a patient from an in-house physician to that of a physician outside of Cone Hospital are effectively and timely communicated; and

b. By failing to provide adequate staff willing and able to meet Plaintiff Jah's need for immediate surgical intervention.

42. As a direct and proximate result of the defendant's administrative negligence, Plaintiff Jah incurred substantial medical and hospital expenses during and as a result of the delayed surgical intervention, and suffered excruciating pain, discomfort and disability.

43. Plaintiff Jah is entitled to recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for personal injuries.

<u>CLAIMS COMMON TO ALL DEFENDANTS</u>

44. The acts and omissions of Defendants GPSA, Truesdale, the Cone Defendants and their employees and agents as alleged hereinabove constitute willful and wanton conduct. These acts and omissions were undertaken in the conscious and intentional disregard of and indifference to the rights and safety of Plaintiff Jah and others. Defendants GPSA, Truesdale, the Cone Defendants and their employees and agents, knew or should have known that these acts and omissions were reasonably likely to result in injury, damage and harm to Plaintiff Jah and others.

45. The defendant's officers and managers participated in or condoned the willful and wanton conduct of their employees and agents.

46. The plaintiff is therefore entitled to recover punitive damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).


<u>RULE 9(j) COMPLIANCE AND
MOTION FOR EXPERT QUALIFICATION RE: RULE 9(j)(2)</u>


47. The medical care rendered by Defendants to Plaintiff Jah and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the care provided by the defendant did not comply with the applicable standard of care.

48. If the Court later determines that the plaintiff's Rule 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), the plaintiff moves to have that person

13

qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and

the plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

<u>RESERVATION OF RIGHT TO OBJECT TO DAMAGES CAP</u>

49. The plaintiff reserves her right to object to N.C.G.S. § 90-21.19 ("the cap on

noneconomic damages") as unconstitutional in the event that the jury returns a verdict for

noneconomic damages in excess of the amount of the cap.

WHEREFORE, the plaintiff prays that:

1. She have and recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

2. She have and recover punitive damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

3. The costs of this action, including the plaintiff's attorney fees, be taxed against the defendant; and

4. She have recover such further relief as the Court deems proper.

14

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury.


Respectfully submitted this the 2nd day of November, 2021.



By:     <u>/s/ Munje B. Foh</u>

Munje B. Foh
Foh Law Group
Attorney for Plaintiff
324 Main St. #1445
Laurel, MD 20725
<u>munjebfoh@gmail.com</u>
Tel 202-596-8150
Fax 855-945-0366
NC Bar No. 39031

15